**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MICHAEL TANAKA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INDICO DATA SOLUTIONS INC.,<br><br>Defendant. | **Case No.: 1:26-cv-13706**<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Tanaka ("Plaintiff"), on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Indico Data Solutions Inc. ("Defendant"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII")[1] and Protected Health Information ("PHI") (collectively, "Private Information") that was impacted in a data breach (the "Data Breach" or the "Breach").

2. Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it and its accompanying responsibility to store and transfer that information.

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

3. This is a "hub-and-spoke" data breach, where Defendant, the "hub," processes and maintains data for numerous clients, the "spokes."

4. Defendant is a software company that provides an intake and orchestration platform purpose-built for insurance and document-intensive operations for various clients, (hereinafter, the "Clients" or "Defendant's Clients").

5. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

6. On May 7, 2026, Defendant determined that it experienced a Data Breach.[2] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[3]

7. Defendant's investigation determined that the following types of Private Information were compromised as a result of the Data Breach: name, date of birth, address, medical and health insurance information.[4]

8. On August 7, 2026, Defendant sent notice letters ("Notice") to individuals impacted by the Data Breach.

9. Defendant failed to take precautions designed to keep individuals' Private Information secure.

10. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

11. The Private Information compromised in the Data Breach contained highly

---

[2] *Exhibit A*, Plaintiff's Notice Letter.
[3] *Id.*
[4] *Id.*

sensitive data, representing a gold mine for data thieves.

12. Armed with the Private Information accessed in the Data Breach (and a head start), data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, and giving false information to police during an arrest.

13. Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

14. Plaintiff brings this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained on behalf of its Clients, and its failure to provide timely and adequate notice to its Clients and their affected customers, including Plaintiff and Class Members, of the Breach and the types of information unlawfully accessed.

15. The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

16. Upon information and belief, Defendant failed to properly monitor and implement security practices with regard to the computer network and systems that housed the Private Information. Had Defendant properly monitored its IT Network, it would have discovered the Breach sooner.

17. Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct as the Private Information that Defendant collected and maintained on behalf

of its Clients is now in the hands of data thieves and other unauthorized third parties.

18. Plaintiff seeks to remedy these harms on behalf of himself, and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

## PARTIES

19. Plaintiff is a citizen and resident of West Hills, California.

20. Defendant is a corporation organized under the state laws of Delaware with its principal place of business located at 77 Sleeper St., PMG 02-109, Boston, Massachusetts 02210.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A). Defendant has its principal place of business located in this District.

22. This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

23. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

24. Defendant is a software company that provides an intake and orchestration platform purpose-built for insurance and document-intensive operations for various Clients.

25. As a condition of doing business, Defendant requires that Clients entrust it with highly sensitive personal information belonging to their customers. In the ordinary course of receiving service from Defendant's Clients, Plaintiff and Class Members were required to provide

their Private Information to Defendant.

26. Upon information and belief, Defendant made promises and representations to individuals', including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

27. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

28. As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties.

**B. The Data Breach**

29. On May 7, 2026, Defendant determined that it experienced a Data Breach.[5] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[6]

30. Defendant's investigation determined that the following types of Private Information were compromised as a result of the Data Breach: name, date of birth, address, medical and health insurance information.[7]

31. On August 7, 2026, Defendant sent notice letters ("Notice") to individuals impacted by the Data Breach.

32. Defendant had obligations created by the FTC Act, HIPAA, contract, common law, and industry standards to keep Plaintiff and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

---

[5] *Exhibit A*, Plaintiff's Notice Letter.
[6] *Id.*
[7] *Id.*

33. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

34. The Data Breach resulted in unauthorized third-party accessing and acquiring files containing unencrypted Private Information of Plaintiff and Class Members. Plaintiff and Class Members' Private Information was accessed and stolen in the Data Breach.

35. Upon information and belief, Plaintiff's Private Information, and that of Class Members, was subsequently published on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

36. Defendant failed to take precautions designed to keep individuals' Private Information secure.

37. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. Defendant's Failure to Prevent, Identify, and Timely Report the Data Breach**

38. Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

39. The Private Information that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

40. Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[8] Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard its past and present clients or customers Private Information.

---

[8] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business

41. The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[9] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

**D. The Harm Caused by the Data Breach Now and Going Forward**

42. Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[10]

43. The type of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft.

44. Plaintiff and Class Members face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach.

45. Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

46. When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web where malicious actors buy and sell that information for profit.[11]

47. For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings,

---

[9] *Id.*

[10] *Prevention and Preparedness*, New York State Police, https://troopers.ny.gov/prevention-and-preparedness

[11] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring

many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[12] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[13]

48. PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[14] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[15]

49. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[16]

50. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[17] Defendant did not rapidly report to Plaintiff and Class Members that their Private Information had been stolen, but instead waited three months to issue Notices.

51. As a result of the Data Breach, the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of Defendant's Data Breach, include: (a) theft

---

[12] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/

[13] *Id.*

[14] *Id.*

[15] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015) https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft

[16] *2019 Internet Crime Report Released*, FBI (Feb. 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion

[17] *Id.*

of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' Private Information.

52. In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

53. Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiff and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

54. The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly or proximately caused by Defendant's wrongful actions and/or

inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

***Plaintiff's Experience***

55. Upon information and belief, Plaintiff is a customer of one of Defendant's Clients.

56. As a condition of obtaining services, Plaintiff was required to provide Defendant and its Client with his Private Information.

57. Defendant was in possession of Plaintiff's Private Information before, during, and after the Data Breach.

58. Plaintiff reasonably understood and expected that Defendant would safeguard his Private Information and timely and adequately notify him in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain his Private Information if he believed that Defendant would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

59. Plaintiff greatly values his privacy and Private Information and takes reasonable steps to maintain the confidentiality of his Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

60. Plaintiff stores any and all documents containing Private Information in a secure location and destroys any documents he receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise his identity and credit card accounts.

61. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

62. As a result of the Data Breach, Plaintiff has spent several hours researching the Data Breach, reviewing his bank accounts, monitoring his credit report, changing his passwords and other necessary mitigation efforts. This is valuable time that Plaintiff would have spent on other activities, including but not limited to work and/or recreation.

63. As a consequence of and following the Data Breach, Plaintiff has experienced a significant increase in spam calls, text messages, and emails, evidencing misuse of his Private Information.

64. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by Defendant's delay in noticing him of the Data Breach.

65. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

66. Plaintiff has a continuing interest in ensuring that his Private Information, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

67. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring his accounts and credit reports for fraudulent activity; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect his Private Information; (d) emotional distress because identity thieves now possess his Private Information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and likely published on the dark web; (f) diminution in the value of his Private Information, a form of intangible property that Defendant obtained from Plaintiff and (g) other economic and non-

economic harm.

## CLASS ALLEGATIONS

68. Plaintiff brings this class action, individually and on behalf of the following Classes:

> Nationwide Class: All individuals whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the "Nationwide Class").
>
> California Subclass: All individuals residing in the State of California whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the "Class").

69. Specifically excluded from the Classes are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

70. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

71. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

72. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Upon information and belief, Plaintiff estimates that the Class is comprised of thousands of members, if not more. The Class is sufficiently numerous to warrant certification.

73. Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had his Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and his claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members, which was caused by the same misconduct by Defendant.

74. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

75. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

76. Predominant Common Questions: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c. Whether Defendant's storage of Plaintiff and Class Member's Private Information was done in a negligent manner;

d. Whether Defendant had a duty to protect and safeguard Plaintiff and Class Members' Private Information;

e. Whether Defendant's conduct was negligent;

f. Whether Defendant's conduct violated Plaintiff and Class Members' privacy;

g. Whether Defendant took sufficient steps to individuals' Private Information;

h. Whether Defendant was unjustly enriched; and

i. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

77. Information concerning Defendant's policies is available from Defendant's records.

78. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

79. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

80. Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

**COUNT I**
**NEGLIGENCE**
**(On behalf of Plaintiff and the Nationwide Class)**

81. Plaintiff restates and re-alleges the allegations contained in paragraphs 1-80, as if fully set forth herein.

82. Defendant knowingly collected, possessed, and maintained Plaintiff and Class Members' Private Information, and therefore had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

83. Defendant's duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

84. Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

85. Defendant owed a duty of care to Plaintiff and Class Members whose Private

Information was entrusted to it. Defendant's duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. To protect the Private Information in its possession it using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to HIPAA and the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

86. Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

87. Defendant's duty also arose because Defendant was bound by industry standards to protect the confidential Private Information entrusted to it.

88. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

89. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding

Plaintiff and Class Members' Private Information within Defendant's possession.

90. Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

91. Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

92. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' Private Information;

e. Failing to comply with the FTCA and HIPAA;

f. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

93. Defendant acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

94. Defendant had a special relationship with Plaintiff and Class Members. Plaintiff

and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Private Information that it stored on them) from attack.

95. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff and Class Members' Private Information to be compromised and exfiltrated, as alleged herein.

96. As a result of Defendant's ongoing failure to notify Plaintiff and Class Members regarding the Data Breach, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

97. Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and loss of time and money to monitor their accounts for fraud.

98. As a result of Defendant's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

99. Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiff and Class Members' Private Information and promptly notify them about the Data Breach.

100. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

101. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

102. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

103. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit

monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On behalf of Plaintiff and the Nationwide Class)**

104. Plaintiff restates and re-alleges the allegations contained in paragraphs 1-80, as if fully set forth herein.

105. Pursuant to Section 5 of the FTCA, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

106. Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq*., Defendant had a duty to implement reasonable safeguards to protect Plaintiff and Class Members' Private Information.

107. Specifically, pursuant to HIPAA, Defendant had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

108. Defendant breached its duties to Plaintiff and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and Class Members' Private Information.

109. Specifically, Defendant breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

110. The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII and PHI (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Defendant's duty in this regard.

111. Defendant also violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

112. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiff and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendant's networks, databases, and computers that stored Plaintiff's and Class Members unencrypted Private Information.

113. Plaintiff and Class Members are among the persons the FTCA and HIPAA are intended to protect, and Defendant's failure to comply with those statutes constitutes negligence *per se*.

114. Plaintiff and Class Members' Private Information constitutes personal property that was stolen due to Defendant's negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

115. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

116. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

117. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT III
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
## (On behalf of Plaintiff and the Nationwide Class)

118. Plaintiff restates and re-alleges the allegations contained in paragraphs 1-80, as if fully set forth herein.

119. Defendant entered into contracts, written or implied, with its Clients to perform services. Upon information and belief, these contracts are virtually identical between and among Defendant and its Clients around the country whose customers, including Plaintiff and Class Members, were affected by the Data Breach.

120. In exchange, Defendant agreed, in part, to implement adequate security measures to safeguard the Private Information of Plaintiff and the Class.

121. These contracts were made expressly for the benefit of Plaintiff and the Class, as Plaintiff and Class Members were the intended third-party beneficiaries of the contracts entered into between Defendant and its Clients. Defendant knew that if it were to breach these contracts with its Clients, its Clients' customers—Plaintiff and Class Members—would be harmed.

122. Defendant breached the contracts it entered into with its Clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiff Private Information from unauthorized disclosure to third parties, and (iii) promptly and adequately detecting the Data Breach and notifying Plaintiff and Class Members thereof.

123. Plaintiff and the Class were harmed by Defendant's breach of its contracts with its clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

124. Plaintiff and Class Members are also entitled to their costs and attorney's fees incurred in this action.

## COUNT IV
## UNJUST ENRICHMENT
## (On behalf of Plaintiff and the Nationwide Class)

125. Plaintiff restates and re-alleges the allegations contained in paragraphs 1-80, as if fully set forth herein.

126. This Count is pleaded in the alternative to Count III above.

127. Plaintiff and Class Members conferred a benefit on Defendant by Defendant's Clients to turn over their Private Information to Defendant. Moreover, upon information and belief, Plaintiff alleges that payments made by Defendant's Clients to Defendant included payment for cybersecurity protection to protect Plaintiff and Class Members' Private Information, and that those cybersecurity costs were passed on to Plaintiff and Class Members in the form of elevated prices charged by Defendant Clients for their services. Plaintiff and Class Members did not receive such protection.

128. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made to it by its Clients on behalf of Plaintiff and Class Members.

129. As such, a portion of the payments made by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

130. Defendant has retained the benefits of its unlawful conduct, including the amounts of payment received indirectly from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

131. Defendant knew that Plaintiff and Class Members conferred a benefit upon it, which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff and Class Members' Private Information and prevented the Data Breach.

132. If Plaintiff and Class Members had known that Defendant had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

133. Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant's to be permitted to retain the benefit of its wrongful conduct.

134. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

135. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

136. Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT V
## VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT
## Cal. Civ. Code §§ 1798.100 *et seq.*, § 1798.150(a)
## (On behalf of Plaintiff and the California Subclass)

137. Plaintiff restates and re-alleges the allegations contained in paragraphs 1-80, as if

fully set forth herein, on behalf of himself and the California Subclass (the "Class" for the purposes of this count).

138. The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA. Section 1798.150(a) specifically provides:

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:
>
> > (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
> >
> > (B) Injunctive or declaratory relief.
> >
> > (C) Any other relief the court deems proper.

139. Defendant is a "business" under § 1798.140(b) in that it is a corporation organized for profit or financial benefit of its shareholders or other owners, with gross revenue in excess of $25 million.

140. Plaintiff and Class Members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

141. Upon information and belief, the personal information of Plaintiff and the Class Members at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the personal information Defendant collects and which was impacted by the cybersecurity attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: date of birth.

142. Defendant knew or should have known that its computer systems and data security

practices were inadequate to safeguard the Class Members' personal information and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the Class Members. Specifically, Defendant subjected Plaintiff's and the Class Members' nonencrypted and nonredacted personal information to unauthorized access and exfiltration, theft, or disclosure as a result of the Defendant's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

143. As a direct and proximate result of Defendant's violation of its duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and Class Members' personal information included exfiltration, theft, or disclosure through Defendant's servers, systems, and website, and/or the dark web.

144. As a direct and proximate result of Defendant acts, Plaintiff and the Class Members were injured and lost money or property, including but not limited to the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their personal information, stress, fear, and anxiety, nominal damages, and additional losses described above.

145. Section 1798.150(b) specifically provides that "[n]o [prefiling] notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages."

146. Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant on August 11, 2026, detailing the specific provisions of the CCPA that Defendant has violated and continue to violate. If Defendant cannot cure within 30 days—and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

147. Accordingly, Plaintiff and the Class Members by way of this complaint seek actual pecuniary damages suffered as a result of Defendant's violations described herein.

**COUNT V**

**COUNT VI**
**VIOLATION OF THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT**
**Cal. Civ. Code § 56, *et seq*.**
**(On behalf of Plaintiff and the California Subclass)**

148. Plaintiff restates and re-alleges the allegations contained in paragraphs 1-80, as if fully set forth herein, on behalf of himself and the California Subclass (the "Class" for the purposes of this count).

149. Defendant is subject to the requirements and mandates of the Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56, et seq.

150. Under Cal. Civ. Code § 56.06(a), any business organized for the purpose of maintaining medical information in order to make that information available to a provider of health care, for purposes of the diagnosis and treatment of the individual, is deemed to be a provider of health care subject to the requirements of the CMIA.

151. Defendant is a "provider of health care" within the meaning of Cal. Civ. Code § 56.06(a) and is subject to the requirements of the CMIA.

152. CMIA section 56.36 allows an individual to bring an action against a "person or entity who has negligently released confidential information or records concerning him or her in violation of this part."

153. As a direct result of Defendant's negligent failure to adequately protect the data it collected from Plaintiff and California Subclass Members, Defendant allowed for a data breach which released the Private Information of Plaintiff and California Subclass Members to criminals and/or third parties.

154. The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j).

155. The CMIA defines individually identifiable information as "medical information [that] includes or contains any element of personal identifying information sufficient to allow

identification of the individual, such as the individual's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.05(j).

156. Defendant lawfully came into possession of Plaintiff and California Subclass Members' medical information and had a duty pursuant to Sections 56.06 and 56.101 of the CMIA to maintain, store, and dispose of Plaintiff and California Subclass Members' medical information in a manner that preserved its confidentiality. Sections 56.06 and 56.101 of the CMIA prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction, or disposal of confidential medical information.

157. Defendant further violated the CMIA by failing to use reasonable care, and in fact negligently maintained Plaintiff and California Subclass Members' medical information as detailed herein.

158. Under Section 56.101 of the CMIA, a breach of confidentiality occurs when medical information is exposed to a significant risk of unauthorized access or use, regardless of whether the information was actually viewed by an unauthorized third party.

159. As a direct and proximate result of Defendant's violations of the CMIA, Plaintiff and California Subclass Members have been injured and are entitled to compensatory damages, punitive damages, and nominal damages of one-thousand dollars ($1,000) for each of Defendant's violations of the CMIA, as well as attorneys' fees and costs pursuant to Cal. Civ. Code § 56.36.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class described above, seek the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Nationwide Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: August 11, 2026

Respectfully,

By: */s/Casondra Turner*

Casondra Turner (MA BBO# 687682)
**MILBERG, PLLC**
260 Peachtree Street NW, Suite 2200
Atlanta, Georgia 30303
Tel: (771) 772-3086
cturner@milberg.com

*Attorney for Plaintiff and the Proposed Class*